ROBERTS v. JAILER. See Case No. 15,463.

ROBERTS (KENT v.). See Case No. 7,715.

ROBERTS (MEADE v.). See Case No. 9,374.

---

## Case No. 11,905.

### ROBERTS et ux. v. MOORE.

[9 Am. Law Reg. 25; 3 Wall. Jr. 292.] [1]

Circuit Court, D. New Jersey. Sept. Term, 1860.

LIMITATION OF ACTIONS—DISABILITIES—TENANCY IN COMMON—ADVERSE POSSESSION—BY AGENT—EJECTMENT.

1. The act of limitations of New Jersey, limiting the right of entry on lands to twenty years, provides that in case of certain disabilities, the time during which the person who shall have the right to entry shall be under any such disability shall not be taken or computed as part of said period of twenty years. *Held*, that when the statute has once begun to run, it will continue to run over all subsequent disabilities.

[Cited in Harris v. McGovern, Case No. 6,-125.]

[See West v. Pine, Case No. 17,423; Wright v. Scott, Id. 18,092.]

2. The ruling of the supreme court of New Jersey in Clark v. Richards, 3 Green [15 N. J. Law] 347, approved.

3. A refusal by one tenant in common to let his co-tenant come in or participate in the enjoyment of the common property, is equivalent to turning him out, and constitutes an adverse possession.

4. The possession of lands by an agent or manager, is an actual possession, within the meaning of the thirty years act of New Jersey, and constitutes an adverse possession as against a co-tenant.

[1] [3 Wall. Jr. 292, contains only a partial report.]

This was an action of ejectment for an undivided portion of a large tract of land in Atlantic county, New Jersey, known as the "Weymouth Furnace Tract," tried before his honor, Mr. Justice Grier, at Trenton, at September term, 1860.

Both parties claimed under Joseph Ball, who died in 1821 intestate, without issue, or brother or sister of the whole or half-blood, or representative of such brother or sister, or father or mother, capable of inheriting. His nearest relatives were a surviving uncle and aunt, and forty-one cousins, some of whom were the children of said uncle and aunt, and others of deceased uncles and aunts. At the time of his decease he owned, in fee, three-eighths of the said tract, containing about sixty thousand acres, with furnace, &c., on it, as tenant in common with Samuel Richards, who owned also three-eighths, and Mrs. Condit, who owned one-fourth. Shortly after the death of Mr. Ball, and more than thirty years before the commencement of this suit, Samuel Richards, supposing that the uncle and aunt were the only heirs, to the exclusion of the cousins, purchased the aunt's interest, and took a deed from her; and also the uncle's interest from his heirs—he having died, intestate, before the purchase. Having thus procured the Ball interest, he purchased out also Mrs. Condit in 1829, and thereby became, as he supposed, the sole owner of the property, and continued to carry on the furnace, and to cut and convert the timber and lumber on the premises to his own use until 1842, when he died, leaving a will, by which he devised the entire tract with the furnace to his two daughters, the wives of Stephen Colwell and Walter D. Bell, Esquires, of Philadelphia, who have ever since held these lands, (except portions sold off within seven years past,) and carried on the furnace upon them, cutting the wood and timber at pleasure. Among the cousins left by Joseph Ball, were Sarah Johnson, a widow, who continued so until her death, in 1828; and Abraham Smith, who died in 1832; and George Custer, who died in 1829. There were nine lessors of the plaintiff—three of them were the children of Sarah Johnson, and were married women when she died; one was a daughter of Abraham Smith, and was married when he died; and five were daughters of George Custer, and were married when he died. The husbands of four of these lessors were still living, and joined in the suit; the husbands of the other five were dead, but the time since their deaths added to the time which had elapsed between the death of Mr. Ball and their respective parents, as above stated, would in no instance make twenty years, so that, if barred by the statute of limitations, it must be on the principle, that the statute began to run against the parents before their death, and afterwards continued, notwithstanding the coverture of the lessors. The suit was commenced in 1858, more than thirty years after the conveyances by the surviving aunt and by the heirs of the surviv-

ing uncle of Mr. Ball, and more than twenty after the said three cousins, under whom the lessors of the plaintiff claimed, had died. There had been no claim made by or under any of the cousins of Mr. Ball, from the time of his death in 1821 to the commencement of this suit in 1858—a period of between thirty-seven and thirty-eight years.

By the statute of descents in New Jersey, in default of issue, and of brothers and sisters and any descendants of them, and of father and mother, the land descends, equally, to the next "in degree of consanguinity" to the intestate, however remote; and the statute of limitations provides, that "thirty years actual possession of land, uninterruptedly continued, wherever such possession was obtained by a fair bona fide purchase of any person in possession and supposed to have a legal right and title thereto, shall vest an absolute right and title in the actual possessor" [Nixon's Dig. p. 433, § 2]; provided that any person under legal disability, when his or her "right or title first accrued," shall have five years to sue after the disability shall be removed. Another section of the statute provides, that no person shall enter on lands, "but within twenty years next after his or her right or title shall accrue," provided that the time during which such person "shall have been under the age of twenty-one years, feme covert, or insane, shall not be taken or computed as a part of the said limited period of twenty years." [Id. p. 436, § 16.]

Two questions were presented by this case: (1) Whether under the New Jersey statute of descents, above stated, giving the land to the next "in degree of consanguinity," the surviving uncle and aunt took to the exclusion of cousins, or in common with them—whether, in computing degrees of kindred, the count was according to the civil or canon law? If by the former, which reckons from the intestate to the common ancestor and then down to the claimant, then the uncle and aunt were the only heirs, for they were in the third degree, and cousins in the fourth. But if by the canon law, which reckons from the common ancestor down to the more remote of the two —the intestate or claimant, then the cousins would inherit with the uncle and aunt; for an uncle and cousin are both in the second degree. This question the court reserved to decide upon argument, if the jury should render their verdict in favor of the plaintiff on the other question. But, as the jury found for defendant, no opinion was given on this point. (2) Whether, under the evidence in this case, the lessors of the plaintiff were barred by the statute of limitations, above referred to?

Mr. Voorhees and W. L. Dayton, for plaintiffs.

Carpenter & Browning, for defendant.

GRIER, Circuit Justice (charging jury). From the evidence in this case it appears, that one Joseph Ball, who died in April, 1821, in-testate, was seized of three-eighths of the Weymouth Furnace tract, containing some sixty thousand acres of land in Gloucester (now Atlantic) county, in this state. He left no issue, brother or sister of either the whole or half-blood, or representative of them; or father or mother capable of inheriting. His nearest relations were a surviving uncle and aunt and some forty-one cousins, children as well of such uncle and aunt as of deceased uncles and aunts. His interest in these lands descended to his heirs; but whether, by a proper construction of the statute of descents in this state, these heirs were the surviving uncle and aunt only, to the exclusion of the cousins, or whether they took, equally, with the cousins, is a question which this court has reserved to itself for future consideration, if it should become necessary to decide it after your verdict upon the other parts of the case. But it would seem to be very clear, from the evidence, that at that time the uncle and aunt supposed they were the only heirs, and so acted; and that the cousins, who could not have been ignorant of this property, acquiesced in this assumption. For the present, however, we will suppose that the construction, which then seems to have been given to this statute, was wrong; and that, instead of this estate descending wholly to the uncle and aunt, they took it in common with the forty-one cousins. The question now is, whether their rights are barred by the statute of limitations?

In determining this question, it is your duty to take the law from the court, and apply it to the facts of the case, as given in evidence. Statutes of limitation are statutes of repose, and should be fairly and honestly executed. They are for the peace of society. Indeed, the well-being of society demands their faithful execution. The getting-up of latent claims, to the disturbance of possessions of long standing, if encouraged, would be an intolerable mischief to any community. When Mr. Ball died, all his next of kin came forward, and claimed his personal estate. Legal proceedings were instituted and prosecuted for its distribution among them. The cousins made no claim to these lands, of which they could not have been ignorant. Indeed, they assented to, or at least asquiesced in, the claims of their uncle and aunt, so that the construction now sought to be given to the statute of descents is a new discovery. If they were then under a mistake, and suffered others to take possession of lands as their own which belonged to them in common, this was a voluntary ouster, or rather the confession of ouster on their part; and it is now, at the expiration of nearly forty years, too late to correct this error, if it was an error.

One of the sections of your statute of limitation provides, that "no person shall enter upon any lands, tenements, and hereditaments, but within twenty years after his or her right or title shall accrue;" provided that the time during which such person "shall be under the

age of twenty-one years, feme covert, or insane, shall not be computed as part of the said limited period of twenty years." Although the phraseology here used is different from the English statute, it is, in my opinion, in substance the same; and under the English act, as well as under similar acts in this country, it has long been a well-established principle, that when the statute once begins to run, it continues to run over all intervening disabilities: that is, if when the title accrues to a female, she should be a single woman, although she should subsequently marry before the expiration of the twenty years, yet the statute would run on the same as if such marriage had not occurred; and at the expiration of the twenty years her title would be gone, the same as if she had not married. This is a sound and well-settled construction of the English act, and, I think, it is also the true construction to be given to this act. Any other construction would stultify the legislature, and render useless the act itself. Instead of being a statute of repose, it would open the way for the very mischiefs it was intended to remedy—dormant claims might be continued for a century, and then wakened up to the serious disturbance of long-established possessions. Whilst I feel myself bound to follow the constructions given by the state courts to their own statutes, although differing from them, yet I entirely concur in the opinion of your own supreme court, made in 1836, in the case of Clark v. Richards, 3 Green [15 N. J. Law] 347.. (The judge here read a paragraph from the opinion delivered by Chief Justice Hornblower.) This is the law of your state, as declared by your supreme court more than twenty years ago; twice subsequently affirmed by the same court in the years 1844 and 1845. I concur in it, as a sound exposition of the act. The dictum of Judge Washington, referred to, in West v. Pine [Case No. 17,423], however much entitled to respect, as coming from that distinguished jurist, appears to have been hastily expressed, without the advantage of an argument, and cannot therefore be regarded as well considered. It would certainly be an indiscreet and dangerous exercise of judicial discretion, after a statute affecting title to real property had received the construction of your own courts, to express even a doubt of its correctness. To reverse such decisions, after they have become rules of property, might unsettle titles, increase litigation, and work intolerable evils. Especially, since the modern discovery of short judicial terms and frequent elections, would this evil be intensely magnified, if in such cases, as often happens, the last judge should affect to exhibit his wisdom by overruling his predecessor. Change of law by statute operates only on the future; but, if made by judicial decision, it re-acts on the past, and may destroy titles before valid and undoubted. If the construction of this statute by your courts had worked injustice, the people of New Jersey could have annulled it

almost any day by legislation; and if for over twenty years it has been received and acquiesced in, as the true construction of a statute so deeply affecting title to real property, it may be said to have the unanimous consent of the whole people. I concur with the learned chief justice in the decision; if I did not I would not venture to doubt its conclusiveness. If, then, there has been an adverse possession by the defendant in this case, and those under whom he claims, for twenty years, and if that adverse possession commenced to run against persons under no legal disability, their right of entry is barred, whatever disabilities may have subsequently occurred, and if you believe the defendant's witnesses, they prove such adverse possession.

It appears, by the evidence in this cause, that the lessors of the plaintiff claim under three of the cousins of Joseph Ball, who were living at the time of his decease, in 1821. One of these cousins was then a widow, and so continued for more than seven years after, when she died, leaving daughters, who were then married women. The other two cousins were men, who lived from eight to eleven years after Joseph Ball; and at their deaths, their interests (if any) vested in their daughters, who were then married. If the statute commenced to run against these cousins before their respective deaths, it continued on, although their heirs were married women, and have so continued ever since.

Adverse possession means holding adversely, or in opposition to, the true owner. This may be by one tenant in common against his co-tenant as well as when no co-tenancy exists. It is true, as a general rule, that the possession of one joint tenant, or tenant in common, is the possession of the other; and that a mere failure to account for the proceeds by the tenant in actual possession does not amount to an ouster. But there need be no actual turning out. A refusal by one joint tenant, or tenant in common, to let his co-tenant come in, or to participate in the enjoyment of the common property, is equivalent to turning him out. It is a question of intent by the actual occupant, and this intention may appear as well by actions as by words. It requires no special or verbal notice, but may be inferred from outward acts. Open and notorious claim of ownership, and exercise of exclusive right, amount to actual ouster. If one take possession of property under a mistake in law, supposing it to be his, and the real owner—standing by—acquiesces, his conduct is a voluntary or confessed ouster on his part, and he cannot afterwards, when he discovers the mistake, say such possession was not adverse. If, then, you believe that when Mr. Ball died, all parties supposed that his surviving uncle and aunt were his only heirs, and that subsequently Mr. Richards purchased from them or their heirs, and has held possession under these conveyances for more than twenty years, the plaintiffs are barred from recovering in this case.

I think, also, the thirty years limitation applies to this case: possession by an agent or manager, is actual possession within the meaning of the statute. If, upon the death of Mr. Ball, it was supposed by all the cousins that the property descended to the uncle and aunt, and the tenant or manager acknowledged them as the owner, they may be considered to have been in possession; and the deeds made by them or their heirs bona fide and for a valuable consideration, are such conveyances as that actual possession under them for thirty years, would give title. The conduct of the cousins clearly shows, that they considered themselves ousted; and the conduct of Mr. Richards, in his long enjoyment as sole and absolute owner, cutting off all the timber, and in many instances re-cutting it, and in the open and extensive business continually carried on upon the premises for himself, and for no other, shows an adverse holding by him, if you believe the witnesses.

If you find a verdict for the plaintiffs, you need not trouble yourselves about cyphering out the minute fractional parts to which they may be entitled: but if you find for the defendant, you will have only so to state, and that will end the controversy.